UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-275-KSF

RONNIE GENE DAVIS                                                                                    PLAINTIFF

v.                                           **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                                    DEFENDANT

* * * * * * * * * * *

The plaintiff, Ronnie Gene Davis, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for period of disability and disability insurance benefits ("DIB"). The Court, having reviewed the record, will grant in part the plaintiff's motion for summary judgment, and remand the Commissioner's decision for further consideration consistent with this opinion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Davis filed this application for DIB benefits on October 26, 2005, which was denied initially and on reconsideration. [TR 38, 43, 47]  At Davis' request, an administrative hearing was conducted on January 10, 2007, and in a written opinion on February 27, 2007, the Administrative Law Judge ("ALJ") denied Davis' claim for benefits.  [TR 16, 523]   The ALJ's decision that Davis is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied his request for review on July 17, 2007. [TR 6]  Davis has exhausted his administrative remedies and filed a timely action in this Court.  This case is now ripe for review under 42 U.S.C. § 405(g).

1

At the time of the ALJ's decision, Davis was 41 years old. He has a tenth grade education (including special education classes) and past relevant work as a heavy equipment mechanic. [TR 527-28, 531] Davis alleges disability due to knee problems and depression/anxiety. [TR 62] His alleged onset date is April 7, 2003 and he has acquired sufficient quarters of coverage to remain insured through March 31, 2009. [TR 47, 16]

Davis has a long history of right knee problems, originating from an injury he suffered on April 7, 2003 when he attempted to jump off a bulldozer while at work. He subsequently underwent right knee surgery in June 2003, and another surgery in September 2003. [TR 116-120] Both procedures were performed by Dr. Ronald K. Belhasen. In a letter dated July 20, 2004, Dr. Belhasen stated that Davis had "significant OA," or osteoarthritis, of the right knee "as well as subtotal lateral menisectomy." As a result, Davis has "the inability to do certain work related activities," including stooping, squatting, bending, or crawling. He opined that Davis "would best be suited with a semi-sedentary occupation that did not involve stair climbing, stooping, squatting, bending or crawling," and further opined that these restrictions were permanent. [TR 157-58] In a subsequent letter dated November 10, 2005, Dr. Belhasen reiterated these restrictions. [TR 156]

Dr. Burandt began treating Davis in 2004 for right knee pain. Dr. Burandt examined Davis and diagnosed early osteoarthritis and treated Davis with Hyaluronic acid injections and Ultram. [TR 229] Nevertheless, Davis continued to suffer from right knee pain. Beginning in August 2004 and continuing through January 23, 2006, Dr. Burandt completed workers' compensation forms indicating that Davis could not return to work. [TR 201, 207, 209, 211, 213, 215, 217, 222, 225] In October 2004, Dr. Burandt performed a right knee arthroscopy with removal of multiple small loose bodies, the third surgery on Davis' right knee. [TR 126-27] At that time Dr. Burandt opined that

Davis would be unable to return to his past relevant work as a heavy equipment mechanic. He also noted that Davis would be limited in bending, stooping, crouching, crawling, squatting, kneeling, climbing stairs and ladders, and restricted him to no standing or walking more than 4-6 hours in an 8-hour day, and no lifting greater than 20 pounds. [TR135-37]

Davis continued to be followed by Dr. Burandt with complaints of right knee pain, and ultimately elected to undergo a right total knee replacement in November 2006. Dr. Burandt performed the right knee replacement on November 11, 2006. [TR 341] During Davis' follow-up examination on November 28, 2006, Dr. Burandt indicated that he was doing fairly well post-operatively, but that he was unable to return to work. [TR 498, 500] On December 19, 2006, Dr. Burandt completed a medical assessment form and indicated that Davis was limited to lifting and carrying a maximum of 10 pounds occasionally; standing and walking less than 2 hours during an 8-hour day and no limitations in sitting with the option to alternate positions every 45 minutes; no stooping/bending, crouching or climbing; and no more than occasional twisting. [TR 506-07]

In addition to the care provided by his treating physicians, Davis was referred to Bobby J. Kidd, M.D., for a consultative examination in September 2004. Dr. Kidd reported that Davis walked with a slight limp, but did not require a cane, and that he appeared comfortable standing or sitting. Dr. Kidd noted moderate crepitus in Davis' right knee, and observed Davis walk on his heels and toes and perform tandem gait. Dr. Kidd noted that Davis could not squat, but otherwise had no limitations. [TR 121-25]

In September 2005, Davis was examined by Dr. Timothy R. Wagner, an orthopedic surgeon, who diagnosed right knee pain with degenerative changes. Dr. Wagner opined that Davis had a 6

3

percent impairment to his whole person, and recommended stronger anti-inflammatory medication and that no total knee arthroplasty be performed. [TR 150-154]

In conjunction with the administrative proceeding, Davis' medical record was examined by state agency medical examiners, Dr. Anzures and Dr. Rawlings. On January 11, 2006, Dr. Rawlings opined that Davis could occasionally lift 20 pounds and frequently lift 10 pounds; stand and/or walk at least 2 hours and sit about 6 hours out of an 8-hour workday; had limited ability to push/pull in the lower extremities; occasionally climb (ramps, stairs, ladder, rope scaffolds), balance, kneel, crouch, and crawl; and avoid concentrated exposure to hazards. Otherwise, Dr. Rawlings found no other limitations. [TR 262-69] Similarly, April 6, 2006, Dr. Anzures concurred in Dr. Rawlings assessment of Davis. [TR 303-09]

In addition to his right knee pain, Davis also alleges that he is disabled due to certain nonexertional limitations. The record reveals that Davis was referred to Dr. Spangler by his attorney for a psychological evaluation on May 5, 2006. Dr. Spangler concluded that Davis had nicotine dependence; low average intelligence; marginal education reading skills (6th grade); limited education math skills (7th grade); and slow pace. [TR 126-27]

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)  If the claimant is currently engaged in substantial gainful activity, he is not disabled.

(2)  If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

4

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

(5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc), he is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider his residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The ALJ began his analysis at step one by determining that Davis has not engaged in any substantial gainful activity since his alleged onset date of April 7, 2003. [TR 18] At step two, the ALJ found that Davis suffers from mild osteoarthritis of both knees and anxiety disorder, which are severe in nature. [TR 18-20] Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments. [TR 20] At the fourth step, the ALJ found that Davis was unable to perform his past relevant work as a heavy equipment mechanic. [TR 24]

5

At the fifth and final step, relying on the testimony of the Vocational Expert ("VE") and taking into consideration Davis' age, educational background, past relevant work experience, and residual functional capacity ("RFC"), the ALJ found that Davis was capable of making a successful adjustment to work existing in significant numbers in the national economy and on this basis denied his claim for DIB. An RFC is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945.(a)(1). In this case, the ALJ found that Davis has the RFC to perform the exertional and nonexertional demands of light work except that which requires lifting and carrying more than 20 pounds occasionally or 10 pounds frequently; sitting, standing or walking more than 6 hours each out of an 8-hour day with the option to alternate between sitting and standing every 45 minutes; any climbing of ropes, ladders, or scaffolds; more than occasional climbing of ramps and stairs; or more than occasional stooping, crouching, or crawling. The ALJ further limited Davis to jobs requiring no more than simple instructions, in an object focused work environment and no jobs requiring more than a 6th grade reading ability. [TR 22]

At the hearing, the VE first considered a hypothetical assuming Davis' age, education, experience and RFC without a sit/stand option. The VE testified that Davis could work in the following positions classified as light work: grinding machine operator, switch box assembler, a case packager, an oil filter inspector. According to the VE, there are about 900 of these types of light jobs in the local labor market and about 250,000 nationwide. The VE also testified that Davis could perform the following sedentary positions: bench assembler and solderer, a ticketing machine operator, a capacitor assembler, a thermostat inspector, a packager of small parts. The VE testified

that about 300 of these sedentary positions exist in the local labor market and about 450,000 nationwide. [TR 558-60]

If the hypothetical RFC additionally included a 45 minute sit/stand option, the VE testified there would be a minimal effect on the number of jobs. Specifically, he testified that it would affect jobs at the sedentary level by about 15 percent and at the light level by about 20 percent at the most. [TR 560-61]

The Appeals Council denied Davis' request for review and adopted the ALJ's decision as the final decision of the Commissioner on July 17, 2007. [TR 6] Davis thereafter filed this action and the parties' motions for summary judgment are now ripe for review.

## II. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must

review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### III. WHETHER EVIDENCE SUBMITTED TO THE APPEALS COUNCIL WARRANTS FURTHER ADMINISTRATIVE CONSIDERATION

The first issue this Court must resolve is whether the additional information Davis submitted to the Appeals Council, after the ALJ had issued his decision, merits a remand. Specifically, Davis presented records from the Cumberland River Comprehensive Care Center dated April 3, 2007 which mention that Davis attempted suicide in August 2006 by pointing an unloaded gun to his head and allegedly pulling the trigger. [TR 508-22] According to Davis, these records confirm the presence of additional nonexertional limitations that would affect his ability to work.

The Court cannot consider this new evidence to determine if the ALJ's decision is supported by substantial evidence, but may remand for further administrative consideration only if the evidence is new and material and if Davis had good cause for not presenting the evidence at a previous proceeding. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); 42 U.S.C. § 405(g). In this case, the "new" evidence presented after the ALJ's decision in February 2007 relates to an event which allegedly occurred in August 2006; thus, it certainly does not qualify as new evidence. Moreover, Davis fails to offer any reason why this information was not presented during the administrative proceedings. Because the evidence is not "new," and Davis has failed to present good cause for neglecting to present this evidence to the ALJ, remand is not appropriate. *Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986).

**IV.     OPINIONS OF TREATING PHYSICIANS**

Next, the Court turns to Davis' claim that the ALJ erred by failing to accord controlling weight to the opinions of Dr. Belhasen, Dr. Burandt, and Dr. Spangler resulting in a disability and RFC determination that is not supported by substantial evidence. For the reasons given below, the Court finds that the ALJ failed to accord controlling weight to the opinions of Dr. Belhasen and Dr. Burandt.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530-31 (6th Cir. 1997); *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris*, 756 F.2d at 435. If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports

9

of individual examinations, such as consultative examinations or brief hospitalizations. . . ." 20 C.F.R. § 404.1527(d)(2). Thus, when weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors, such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

Turning first to Dr. Spangler, the Court notes that he was a one-time consultative examiner, not a treating physician with a longstanding relationship with Davis, and thus is not entitled to the controlling weight normally accorded a treating physician. Moreover, the ALJ appropriately assigned "little weight" to Dr. Spangler on the grounds that he assigned a Global Assessment of Functioning score of 70-75 - above the mild-moderate range and indicating only mild or transient symptoms. [TR 240] *See also* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed. 2000). In rejecting Dr. Spangler's opinion, the ALJ also noted that the record failed to reflect any course of mental health treatment or complaints of psychological symptoms. [TR 24] Although Davis was treated for anxiety, he was not referred for regular treatment or hospitalization, and failed to seek any treatment on his own.

Instead, the ALJ relied on the state agency mental health experts who opined that Davis does not have any significant impairments relating to psychological issues. [TR 271-298] The ALJ is entitled to accept the opinions of the State Agency medical experts where a contrary medical opinion

is not supported by objective medical evidence. *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 686 (6th Cir. 1992). The regulations specifically provide that "[s]tate agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(I). Other than Dr. Spangler's one-time examination, there was simply no evidence that Davis' alleged mental impairment impacts his ability to function. Nevertheless, the ALJ did include certain non-exertional restrictions in Davis' RFC, including limiting him to jobs requiring no more than simple instructions, in an object focused work environment, requiring no more than a 6th grade reading ability. [TR 22, 24] For these reasons, the ALJ did not err in rejecting Dr. Spangler's opinion.

On the other hand, the Court finds that the ALJ erred by failing to give controlling weight to the opinions of Davis' treating orthopedic surgeons, Dr. Belhasen and Dr. Burandt. Other than the opinions from one-time consultative physicians, and the state agency physicians who simply reviewed Davis' medical record, nothing in the medical record contradicts Dr. Belhasen or Dr. Burandt's restrictions. In fact, Davis' own medical record with the multiple knee surgeries, including a total knee replacement, provide abundant objective findings for the treating physicians' restrictions. Both Dr. Belhasen and Dr. Burandt had a long-term, physician-patient relationship with Davis and both are specialists in the field relevant to Davis' alleged disability resulting from knee problems. Moreover, Dr. Burandt is the only physician in the record to have examined and treated Davis after his November 2006 total knee replacement. Certainly this opinion is entitled to great weight. By failing to consider the factors listed in 20 C.F.R. § 404.1527(d) to determine the weight

11

to be given the opinions of Dr. Belhasen and Dr. Burandt, the ALJ's rejection of these treating physicians' assessments of Davis' functional capacity is not supported by substantial evidence.

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 174 (6th Cir. 1994)(citing 42 U.S.C. § 405(g)). Under sentence four of 42 U.S.C. 405(g), this Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where, as in this case, there is insufficient support for the ALJ's findings, the appropriate remedy is reversal and a sentence-four remand for further consideration. *See Faucher*, 17 F.3d at 174.

**V.   CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE # 5] is **GRANTED IN PART** to the extent that this matter is remanded to the Commissioner for further proceedings and **DENIED IN PART** to the extent that plaintiff seeks an award of benefits;

(2) the Commissioner's motion for summary judgment [DE # 6] is **DENIED**;

(3) the decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion & Order; and

(4) a judgment will be entered contemporaneously with this Opinion & Order.

This April 24, 2008.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge